UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES LEE BLAYLOCK,

        Petitioner,

                                            CASE NO. 2:10-CV-15044

v.                                          JUDGE PATRICK J. DUGGAN

                                          MAGISTRATE JUDGE PAUL J. KOMIVES

SHERRY BURT,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
     D.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
          2.    *Trial Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
               a. Failure to Suppress Lineup . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
               b. Failure to Retain Identification Expert . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
               c. Failure to Investigate Alibi . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
          3.    *Appellate Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
     E.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
          1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
     F.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

\*      \*      \*      \*      \*

I.     RECOMMENDATION: The Court should deny petitioner's application for the writ of

habeas corpus and should deny petitioner a certificate of appealability.

II.    REPORT:

A.     *Procedural History*

       1.     Petitioner James Lee Blaylock is a state prisoner, currently confined at the Muskegon

Correctional Facility in Muskegon, Michigan.

2.      On April 4, 2007, petitioner was convicted of armed robbery, MICH. COMP. LAWS § 750.529; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court.  On April 20, 2007, he was sentenced to a term of 85 months' to 20 years' imprisonment on the robbery conviction, and to a mandatory consecutive term of two years' imprisonment on the felony-firearm conviction.

3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.      DEFENDANT-APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL WHERE COUNSEL (A) FAILED TO CONSULT WITH AND/OR SEEK TO RETAIN OR HAVE APPOINTED AN EXPERT WITNESS IN EYEWITNESS IDENTIFICATION EVIDENCE TO SUPPORT THE DEFENSE THEORY OF MISIDENTIFICATION AND (B) FAILED TO MOVE TO SUPPRESS THE PRE-TRIAL IDENTIFICATION; PREJUDICE IS ESTABLISHED WHERE THE ENTIRE CASE RESTED ON THE IDENTIFICATION EVIDENCE.

II.     DEFENDANT-APPELLANT'S SENTENCE OF 85 MONTHS TO 20 YEARS IN PRISON CONSTITUTES AN IMPROPER UPWARD DEPARTURE FROM THE LEGISLATIVE SENTENCING GUIDELINES AND RESENTENCING IS REQUIRED WHERE THE TRIAL COURT REFUSED TO ACKNOWLEDGE THAT THE GUIDELINES HAD THE FORCE OF LAW AND/OR FAILED TO ARTICULATE A BASIS FOR THE DEPARTURE.

III.    DEFENDANT-APPELLANT IS ENTITLED TO A CORRECTION OF THE PRESENTENCE REPORT WHICH INDICATES TYPOGRAPHICAL ERRORS AND AN OFFENSE FOR WHICH HE COULD NOT HAVE BEEN CONVICTED AS THE OFFENSE DATE OCCURRED WHILE THE DEFENDANT WAS IN CUSTODY; TO THE EXTENT THAT COUNSEL FAILED TO OBJECT TO THE PRESENTENCE REPORT AT SENTENCING, HE PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF DEFENDANT-APPELLANT'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS.

Petitioner filed a supplemental *pro se* brief raising one additional claim:

> IV.   DEFENDANT-APPELLANT WAS DENIED THE RIGHT TO THE
> EFFECTIVE ASSISTANCE OF COUNSEL WHICH IS GUARANTEED
> BY THE UNITED STATES CONSTITUTION WHERE SAID COUNSEL
> FAILED TO INVESTIGATE KNOWN AND POTENTIALLY
> IMPORTANT ALIBI WITNESSES AND HIS SUBSEQUENT FAILURE
> TO FILE NOTICE OF ALIBI.

The court of appeals remanded for correction of the presentence report, and in all other respects found no merit to petitioner's claims and affirmed his conviction and sentence. *See People v. Blaylock*, No. 278221, 2009 WL 1693226 (Mich. Ct. App. June 16, 2009) (per curiam).

4.      Petitioner, proceeding *pro se*, sought leave to appeal in the Michigan Supreme Court raising his first and fourth claims. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Blaylock*, 485 Mich. 1009, 775 N.W.2d 784 (2009).

5.      On December 20, 2010, petitioner filed an application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254, raising the first, second, and fourth claims that he raised in the Michigan Court of Appeals. Petitioner simultaneously filed a motion to hold his petition in abeyance so that he could further exhaust his claims. The Court granted the motion on January 18, 2011.

6.      Petitioner subsequently filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the ineffective assistance claim that he raised in his *pro se* appellate court brief, as well as a claim that appellate counsel was ineffective for failing to raise this claim on appeal. On June 6, 2011, the trial court denied petitioner's motion for relief from judgment, concluding that these claims were barred by MICH. CT. R. 6.508(D)(2) because they had previously been raised and adjudicated on his direct appeal. The Michigan Court of Appeals denied petitioner's application for leave to appeal in a standard order. *See People v. Blaylock*, No. 310683

(Mich. Ct. App. Nov. 30, 2012).  Petitioner's application for leave to appeal to the Michigan Supreme Court was rejected without filing as untimely.

 7. Petitioner returned to this Court seeking a reopening of his habeas application on April 24, 2013.  The Court granted petitioner's request and reopened the case on May 29, 2013.

 8. Respondent filed her answer on July 29, 2013.  She contends that petitioner's claims are without merit.

 9. Petitioner filed an amended petition on September 12, 2013.  Petitioner's amended petition raises the same ineffective assistance claims raised in his initial petition and his state court motion for relief from judgment.

B. *Factual Background Underlying Petitioner's Conviction*

 The factual background underlying petitioner's conviction was accurately summarized by the Michigan Court of Appeals:

> Defendant was convicted of robbing Douglas Bartell, an off-duty police officer, at gunpoint as Bartell was leaving his family's business on October 23, 2006. Bartell provided the police with a description of the suspect and described the gun used in the offense as a nickel-plated semi-automatic handgun, possibly .45 caliber. Defendant was arrested one day after the offense for carrying a concealed weapon after he was found in possession of a nickel-plated, semi-automatic, nine-millimeter handgun.  One week after the offense, Bartell identified defendant in a photographic array as the gunman.  The principal defense at trial was misidentification.

*Blaylock*, 2009 WL 1693226, at *1.

 Following his conviction, as part of the direct appeal process, petitioner filed a motion for new trial in the trial court raising his ineffective assistance of counsel claims.  In connection with that motion, the trial court held an evidentiary hearing, at which Dr. Solomon Fulero testified as an expert in identification.  Petitioner's counsel, David Lankford, also testified at the hearing.  The evidence adduced at that hearing was accurately summarized in petitioner's brief in the Michigan

Court of Appeals:

Dr. Solomon M. Fulero of the Department of Psychology at Sinclair College in Dayton, Ohio, testified in his capacity as an expert in the area of psychology of eyewitness identification and the collection of eyewitness evidence without objection from the prosecution. Dr. Fulero reviewed investigator reports, police statements and trial transcripts in the instant case as well as the photographic line-up conducted.

Dr. Fulero described the scientific research on eyewitness accuracy and the factors that affect such evidence. Dr. Fulero confirmed that there have been studies to try to quantify the impact of eyewitness identification testimony in criminal cases. He also cited an example of an actual federal criminal trial in Detroit, Michigan in which the original trial – without eyewitness identification evidence testimony – resulted in a conviction, but that upon retrial – with eyewitness identification evidence testimony – the result was an acquittal for the defendant. . . .

The generally accepted theory of memory was described as the reconstructive theory of memory, or information that is put into memories and reconstructed later from that available information. Post-event information can affect a witness' memory of the initial event. For that reason, it is important to collect eyewitness evidence early and completely. Memory itself is divided into three stages: acquisition (putting the event in), retention (keeping the memory) and retrieval (getting the memory back out).

Many factors that are present during the acquisition stage – the event itself – can impact eyewitness reliability. Prior to discussing these factors, Dr. Fulero first recognized the fact that the complaining witness in this case was a 30 year veteran of the police force; but contrary to popular opinion, the research indicated that police officers were not any better at eyewitness reliability or eyewitness accuracy than lay people. Second, Dr. Fulero acknowledged that Mr. Bartell was particularly cognizant of his surroundings prior to the robbery. However, such awareness would not necessarily increase the accuracy of facial identification as opposed to the accuracy of the events that took place. One of the factors that impact the acquisition stage is exposure time. Exposure time relates to the actual time that the witness is looking at the face of the perpetrator, not the length of the event itself, which is often over-estimated by the stress of the event on the witness. In the instant case, where Mr. Bartell testified that the entire robbery lasted 40-50 seconds, the amount of time that he looked at the face of the perpetrator would be even less. Dr. Fulero explained the concept of "detail salience" which refers to the fact that in a complex event people can not pay attention to every detail. For example, in this case, where Mr. Bartell insisted that he reported that the perpetrator had a moustache, but that information was not in an initial police report, the importance of accurately recording information was underscored. That is because it is possible that he did not make such a report or that post-event information altered the memory. The presence of a hat could also alter the focus on the face itself, as well as the fact that the perpetrator and the victim were not standing face-to-face, but side-to-side after the complaining witness rose from a seated position in his car. The concept of "weapons focus" also

5

plays a part in memory. A weapon draws a lot of attention and increases stress and therefore decreases accuracy in facial identification. Dr. Fulero dispelled the notion that a person could look at both the weapon and the perpetrator's face simultaneously. High levels of fear and stress and arousal also decrease accuracy in a witness' facial identification, even if the memory of the event itself is strong. Other factors such as lighting and distance can also be important in some cases in the initial acquisition of the memory.

Many factors can influence the retention phase of memory. Dr. Fulero was part of a team assembled to create a manual for law enforcement to reduce some of the problems that occur during line-ups based on scientific research. Early, complete and accurate documenting/reporting is emphasized because a witness' memory fades after the event. The memory fades rapidly, and research indicates that "people forget most of what they're going to forget within about the first eight hours after an event is over." Dr. Fulero testified that a statement made seven to eight days after the crime occurs and an identification has been made in a line up is not as good as if the statement or identification was made right away. Post-event information can become incorporated into the memory of the initial event and alter the details. In particular, line-ups or photographic spreads should be done in a way that avoids bias or suggestivity, and instructions should be given that the suspect "may or may not" be in the array.

In terms of the retrieval stage of memory, Dr. Fulero testified that research revealed that a witness' confidence in the identification was not related to accuracy. He believed his testimony would have been helpful in a case such as this to explain the science of eyewitness identification where it was the only evidence against Mr. Blaylock at trial.

In cross-examination, Dr. Fulero acknowledged that some of the scientific studies to verify eyewitness identifications were not conducted on actual crime victims. Dr. Fulero was not aware of studies on actual jurors who deliberated on cases; only jury pools. Dr. Fulero was aware of studies that revealed police officers to be better witnesses than lay people, but maintained that was the case with descriptions of events and not necessarily with facial identifications. Finally, even if some studies showed that confidence and accuracy were related, the science should still be explained to the jurors in order to assist the factfinder in assessing the credibility of the eyewitness.

Upon questioning from the Court, Dr. Fulero testified that his fees varied by case but that the average was $250.00 per hour for his services.

Attorney David Lankford was appointed to represent Mr. Blaylock at trial. Mr. Lankford had been practicing law in the State of Michigan since 1989 and practices in the area of criminal defense exclusively since that time. He testified that he was a senior trial attorney with the Defender's Office in the City of Detroit. Mr. Lankford was the original attorney assigned to represent Mr. Blaylock in the instant matter. Mr. Lankford estimated that he met with Mr. Blaylock prior to trial approximately 2 or 3 times at the Wayne County Jail. Mr. Lankford could not specifically recall speaking with Mr. Blaylock's family members in preparation for

6

trial. Mr. Lankford was aware of the instant claim of that [sic] he did not render the effective assistance of counsel at Mr. Blaylock's trial.

Mr. Lankford testified that the theory of the defense was that Mr. Blaylock was misidentified by Mr. Bartell. Mr. Lankford reviewed the preliminary examination transcript and discovery in preparation for trial. He made inquiry of Mr. Blaylock as to his whereabouts, but according to Mr. Lankford, Mr. Blaylock did not provide any alibi information. Aside from the eyewitness identification, the other evidence at trial was the suggestion that the gun found on Mr. Blaylock when he was arrested a couple of days after the robbery was the same gun used in the robbery itself. Mr. Lankford attempted to bring out at trial the fact that the caliber of weapons was different from the description by Mr. Bartell and the weapon from Mr. Blaylock, and that a veteran police officer could not have made that mistake.

Mr. Lankford believed that the photographic line up procedure was improper because Mr. Blaylock was in custody at the time that the lineup was conducted. Mr. Lankford did not attempt to obtain the jail records to establish that Mr. Blaylock was, in fact, in custody, because he did not believe it was a point disputed by the parties. Further, Mr. Lankford did not believe that he could demonstrate that the officers knew he was in custody on that separate charge consistent with the case law. Mr. Lankford also believed that Mr. Blaylock was the only person in the photographic array that fit the description of the robber. Mr. Lankford made a decision not to file any type of motion to suppress the line up because he wanted the jury to understand that the misidentification began at that point in the process.

Mr. Lankford was familiar with the work of the Innocence Project and testified at trial that he desired to make an argument about misidentifications contributing to the convictions of people who were later exonerated by DNA evidence. However, the trial court would not allow Mr. Lankford to make such an argument because it was not relevant. Mr. Lankford acknowledged that this case did not involve DNA evidence, but he believed that the consequence of misidentification causing a conviction of an innocent person was the same. He was unaware of a body of expert witnesses who testified regarding the science behind eyewitness identifications. Further, Mr. Lankford was unaware of any attorney in Wayne County who utilized an expert witness for that purpose. He did not consult with any eyewitness identification expert in preparation for trial.

Mr. Lankford testified that he regularly attends continuing legal education as required at the Defender's Office and for practicing in Wayne County. He did not recall attending any lectures on identification expert testimony; only cross-examination techniques when the issue is misidentification. Mr. Lankford knows 98% of the attorneys who practice in Wayne County Circuit Court (Criminal Division); he could not recall any discussions with those attorneys regarding expert witnesses. Mr. Lankford has used other types of expert witnesses, and agreed with the prosecutor in cross-examination that it can have a negative effect on the jury especially if the science is not particularly complex. As a general rule, Mr. Lankford encouraged his expert witnesses not to patronize the jury with their testimony. In this particular case, Mr. Lankford requested and the jury was instructed on the

credibility of witnesses and the factors to consider regarding eyewitness identifications. It never occurred to him to hire an expert to explain these concepts at trial. Regardless, he believed that he covered all the important points for the jury to consider regarding the identification issues. Mr. Lankford believed that he did everything he could for Mr. Blaylock. Mr. Lankford agreed what it would have been "nice" to have a qualified expert who presented well to the jury on that subject.

Def.-Appellant's Br. on Appeal, in *People v. Blaylock*, No. 278221 (Mich. Ct. App.), at 6-12

(citations to evidentiary hearing transcript omitted).

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts

the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409. As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). As the Court explained, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)). Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the

Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412). The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.    *Analysis*

Petitioner raises four claims for relief, all asserting that his trial and appellate attorneys

rendered constitutionally ineffective assistance. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the

11

elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

With respect to appellate counsel, it is well established that "appellate counsel . . . need not

(and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)).  Although it is "possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, . . . it is difficult to demonstrate that counsel was incompetent." *Id*.  As a general rule, it is "'only when ignored issues are clearly stronger than those presented [that] the presumption of effective assistance of counsel [can] be overcome.'" *Id*. (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).  Further, in the appellate counsel context, to demonstrate prejudice petitioner must show a reasonable probability that his claims would have succeeded on appeal.  *See id*. at 285-86; *Benning v. Warden*, 345 Fed. Appx. 149, 155-56 (6th Cir. 2009); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996).

   2. *Trial Counsel*

    *a.  Failure to Suppress Lineup*

   Petitioner first contends that counsel was ineffective for failing to move to suppress the photographic lineup, which he argues was unduly suggestive.  The Michigan Court of Appeals rejected this claim, concluding that petitioner could not establish that he was prejudiced by counsel's failure to move to suppress the identification for two reasons.  First, the court reasoned that a motion to suppress the lineup would not have been successful, because the photographic array was not unduly suggestive.  The court reasoned:

> Although there are differences in age among the six men, they all appear within an appropriate range for the description of a suspect in his 20s.  All six men have short dark hark, are of the same race, and each has a similar size face.  Two of the men do not appear to have mustaches, but the remaining four men have facial hair.  Because facial hair is easily removed, the absence of facial hair on two of the men does not render the array as a whole unduly suggestive.  Furthermore, although Dr. Fulero explained at the posttrial *Ginther* hearing that other procedures could have been used to enhance the accuracy of an identification, a due process violation is established

13

> only if the procedure employed was calculated to lead to a substantial likelihood of
> misidentification.  Here, the record discloses that Bartell was presented with
> photographs of six different men and told that the person who robbed him may or
> may not be depicted in the photographs.  This procedure was not calculated to lead
> to a substantial likelihood of misidentification.

*Blaylock*, 2009 WL 1693226, at *4.  Second, the court held that even if the photographic array was

suggestive, petitioner was not prejudiced because there was an independent basis for Bartell's

subsequent in-court identification.  *See id.*  Finally, the court of appeals rejected petitioner's claim

that counsel was ineffective for failing to suppress Bartell's identification of him at the preliminary

examination, reasoning that "given Bartell's prior identification of defendant in the photographic

array and the existence of an independent basis for Bartell's identification of defendant, a motion

to suppress on this ground would not have been successful."  *Id.* at *5.  The Court should conclude

that these determinations were reasonable.

A pre-trial identification procedure violates the Constitution if "the confrontation conducted

. . . was so unnecessarily suggestive and conducive to irreparable mistaken identification that [the

defendant] was denied due process of law."  *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967).

Similarly, a subsequent in-court identification following an impermissibly suggestive pre-trial

identification is unconstitutional if the pre-trial "identification procedure was so impermissibly

suggestive as to give rise to a very substantial likelihood of irreparable misidentification."  *Simmons

v. United States*, 390 U.S. 377, 384 (1968).  *See generally*, *Neil v. Biggers*, 409 U.S. 188, 197-98

(1972).  A suggestive line-up alone, however, does nor require exclusion of identification evidence.

"The admission of testimony concerning a suggestive and unnecessary identification procedure does

not violate due process so long as the identification possesses sufficient aspects of reliability."

*Manson v. Brathwaite*, 432 U.S. 98, 106 (1977).  Thus, the central question in a case where the pre-

14

trial identification procedure is impermissibly suggestive is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Biggers*, 409 U.S. at 199; *accord Manson*, 432 U.S. at 114. The factors relevant to this "totality of the circumstances" analysis include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Biggers*, 409 U.S. at 199-200; *accord Manson*, 432 U.S. at 114. Thus, a court must "follow[] a two-step analysis in determining whether an identification is admissible." *United States v. Crozier*, 259 F.3d 503, 510 (6th Cir. 2001). First, the court must "consider whether the identification procedure was suggestive." *Id*. If it was not, the "identification testimony is generally admissible without further inquiry," and any question as to the reliability of the identification "goes to the weight of the evidence, not its admissibility." *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990).

Here, the Michigan Court of Appeals reasonably determined that the photographic array was not impermissibly suggestive. A line-up is impermissibly suggestive if "the procedure itself steered the witness to one suspect or another, independent of the witness's honest recollection." *Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir. 2001). Thus, a line-up is impermissibly suggestive where it "emphasizes the focus on a single individual thereby increasing the likelihood of misidentification." *United States v. Montgomery*, 150 F.3d 983, 992 (9th Cir. 1998) (internal quotation omitted); *see also*, *United States v. Wong*, 40 F.3d 1347, 1359-60 (2d Cir. 1994); *Griffin v. Rose*, 546 F. Supp. 932, 936 (E.D. Tenn. 1981), *aff'd*, 703 F.2d 561 (6th Cir. 1982). In short, an identification procedure is suggestive only if it "directs undue attention to a particular" person. *State v. Ramires*,

15

37 P.3d 343, 350 (Wash. Ct. App. 2002). Thus, a photographic array is impermissibly suggestive if "the picture of the accused, matching descriptions given by the witness, so stands out from all of the other photographs as to suggest to an identifying witness that that person was more likely to be the culprit." *United States v. Thai*, 29 F.3d 785, 808 (2d Cir. 1994) (internal quotation omitted). As the court of appeals observed, the photographic array consisted of pictures of six individuals of the same race, with similarly shaped faces and hair cuts.[1] Although the ages varied, none was significantly older or younger in appearance than the others or than the description given by Bartell. None of the persons pictured exhibited an identifying mark, such as a scar or tattoo, that made him stand out from the others. And there is no evidence that any suggestive procedure was employed in utilizing the photographic array. On the contrary, the only evidence regarding the lineup in the record shows that Bartell was told that the suspect may or may not be pictured, and there was no other evidence presented of any suggestive techniques used by the police in conducting the lineup. "Without any evidence of impermissibly suggestive procedures, . . . [petitioner's] claims go to the weight of the identification testimony and not its admissibility. As various courts have explained, '[g]enerally if identification procedures prior to trial were not unduly suggestive, questions as to the reliability of a proposed in-court identification affect only the identification's weight, not its admissibility.'" *Williams v. Romanowski*, No. 2:06-CV-12670, 2008 WL 6875005, at *29 (Jan. 29, 2008) (Komives, M.J.) (quoting *United States v. Matthews*, 20 F.3d 538, 547 (2d Cir. 1994); citing *United States v. Crozier*, 259 F.3d 503, 510 (6th Cir. 2001)), *magistrate judge's report adopted*, 2009 WL 4947429, at *3 (E.D. Mich. Dec. 14, 2009) (Tarnow, J.). And because petitioner cannot

---

[1]A copy of the photographic array is attached as an exhibit to petitioner's habeas application. A somewhat clearer copy is attached as an exhibit to petitioner's brief in the Michigan Court of Appeals.

16

show that the in-court identification was inadmissible by virtue of a suggestive pre-trial identification procedure, any objection by counsel would have been futile. Counsel cannot be deemed ineffective for failing to raise a meritless objection. *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.[2]

### b. Failure to Retain Identification Expert

Petitioner next contends that counsel was ineffective for failing to retain an identification expert to testify regarding the dangers of eyewitness identification. The Michigan Court of Appeals rejected this claim, explaining that an expert was not necessary and that petitioner could not establish prejudice because counsel effectively challenged the identification:

> [T]he record in this case does not establish the appropriate showing of need for such an expert. In this case, counsel was able to challenge the strength and reliability of Bartell's identification testimony through more traditional means. Through his

---

[2]Petitioner also argues that counsel should have suppressed the in-court identification of him by Bartell at the preliminary examination, because that courtroom identification was impermissibly suggestive. However, in *Perry v. New Hampshire*, 132 S. Ct. 716 (2012), the Court recently explained that the dangers of identification testimony are ordinarily to be combated by the safeguards inherent in the criminal justice system, including the rights of counsel, compulsory process and confrontation, and that reliability is determined by the finder of fact. A pretrial determination of reliability by the court is required only where the identification results from impermissibly suggestive pretrial procedures *arranged by the police*. *See id.* at 721 & n.1, 724-28, 730. Specifically, the Court held:

> When no improper law enforcement activity is involved, we hold, it suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, the presence of counsel at postindictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt.

*Id.* at 721. Any identification of petitioner based on Bartell's observation of petitioner in court at the preliminary hearing and at trial was not the result of impermissibly suggestive pretrial procedures. As the Supreme Court observed in *Perry*, "all in-court identification" "involve some element of suggestion." *Id.* at 727. Such identifications, however, do not require a pretrial determination of admissibility. *See id.*

cross-examination, counsel elicited apparent discrepancies and arguable bases for questioning the reliability and accuracy of Bartell's perception of the crime and identification of defendant. He elicited that the robbery occurred during the span of 40 to 50 seconds and that Bartell's attention was at times focused on the handgun possessed by the perpetrator. He also elicited that Bartell, a veteran police officer for 30 years, described the weapon used during the crime as a .45-caliber handgun, whereas the weapon defendant possessed when he was arrested was a nine-millimeter handgun. Counsel also cross-examined Bartell regarding his identification of defendant in the photographic array, eliciting that the array was conducted approximately a week after the crime, that two of the photographs depicted men who were much older than the suspect Bartell had described, and that some of the photographs depicted men without mustaches, unlike the suspect Bartell had described. In addition, counsel cross-examined the officer who conducted the photographic array, eliciting that there were differences in the ages of the men depicted in the various photographs, and that the photographs did not convey the heights and weights of the men pictured. Under the circumstances, because defense counsel was able to challenge the reliability and accuracy of the identification evidence through appropriate means of cross-examination, defendant has failed to show either that counsel was ineffective for failing to request the appointment of an identification expert, or that he was prejudiced by the absence of such an expert at trial.

*Blaylock*, 2009 WL 1693226, at *3. This determination was reasonable.

First, counsel's decision to rely on extensive cross-examination attacking the identifications and the basis for them was a reasonable tactical decision. *See Cantu v. Collins*, 967 F.2d 1006, 1016 (5th Cir. 1992); *Madrigal v. Bagley*, 276 F. Supp. 2d 744, 790 (N.D. Ohio 2003), *aff'd*, 413 F.3d 548 (6th Cir. 2005); *Dorch v. Smith*, No. 01-CV-71206, 2002 WL 32598987, at *18 (E.D. Mich. Sept. 11, 2002) (Tarnow, J.). Second, the substance of any evidence that could have been presented by an expert was presented to the jury through cross-examination and petitioner's arguments, and thus petitioner cannot show that counsel was deficient or that he was prejudiced by counsel's failure to retain an identification expert. *See Easter v. Fleming*, 132 Fed. Appx. 706, 708 (9th Cir. 2005); *Ford v. Cockrell*, 315 F. Supp. 2d 831, 853 (W.D. Tex. 2004), *aff'd*, 135 Fed. Appx. 769, 773-74 (5th Cir. 2005); *Madrigal v. Bagley*, 276 F. Supp. 2d 744, 792 (N.D. Ohio 2003).*See generally*,

18

*Perkins v. McKee*, 411 Fed. Appx. 822, 833 (6th Cir. 2011) ("No precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment. And there is nothing about this case suggesting that such a witness was imperative here."). Third, petitioner cannot show that he was prejudiced by counsel's failure to call an identification expert. Counsel extensively cross-examined Bartell regarding the bases of his identification, and this cross-examination provided petitioner "ample opportunity to show he was a victim of misidentification." *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1128 (10th Cir. 2006); *see also*, *United States v. Brewer*, 783 F.2d 841, 843 (9th Cir. 1986). As the Sixth Circuit has explained, "the hazards of eyewitness identification are within the ordinary knowledge of most lay jurors." *United States v. Langan*, 263 F.3d 613, 623 (6th Cir. 2001). In light of counsel's cross-examination of the witnesses, there is not a reasonable probability that the result of the proceeding would have been different had an expert testified. For these reasons, the Michigan Court of Appeals's rejection of this claim was reasonable, and petitioner therefore is not entitled to habeas relief.

### c. Failure to Investigate Alibi

Petitioner next contends that his trial counsel was ineffective for failing to investigate and present at trial two alibi witnesses. In support of this claim, petitioner presents the affidavits of his sister, Keisha Davidson, and his mother, Jane Ahaiwe. In their affidavits, both aver that petitioner returned home between 5:00 and 6:00 p.m. on the evening of the robbery, and did not leave the house all night. Both also aver that petitioner watched wrestling with Davidson's son from 8:00-10:00 p.m., which they did every week. These affidavits are both dated February 9, 2009, and both were notarized on February 17, 2009. The Michigan Court of Appeals rejected petitioner's claim,

explaining that even if these affidavits were properly part of the record, at the evidentiary hearing "defense counsel explained that a possible alibi defense was never raised and that defendant advised counsel that he could not recall where he was at when the crime was committed." *Blaylock*, 2009 WL 1693226, at *7. Therefore, the court concluded, petitioner could not show that his counsel was ineffective for focusing on a misidentification defense and failing to pursue an alibi defense. *See id*. This determination was reasonable.

First, in reaching its conclusion that counsel was not ineffective the court of appeals made a factual determination, based on counsel's testimony at the evidentiary hearing, that petitioner did not inform counsel of his potential alibi defense. The habeas statute provides that, in a habeas case, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Ramonez v. Berghuis*, 490 F.3d 482, 490 (6th Cir. 2007) ("[I]n the context of a *Strickland* evidentiary hearing, it is for the judge to evaluate the credibility of the criminal defendant and the former defense counsel in deciding what advice counsel had in fact given to the defendant during his trial, and such findings are entitled to the Section 2254(e)(1) presumption."). "'Clear and convincing evidence' within the meaning of § 2254(e) 'requires greater proof than preponderance of the evidence' and must produce 'an abiding conviction' that the factual contentions being advanced are 'highly probable.' *Cooper v. Brown*, 510 F.3d 870, 919 (9th Cir. 2007) (quoting *Sophanthavong v. Palmateer*, 378 F.3d 859, 866 (9th Cir.2004)); *cf. Colorado v. New Mexico*, 467 U.S. 310, 316 (1984).[3] Here, petitioner has presented no clear and convincing evidence

---

[3]There is some dispute as to whether the § 2254(e)(1) presumption applies where a federal habeas court is considering only the evidence adduced in the state courts. Some courts have held that § 2254(e)(1) applies to all factual determinations, while others have held that § 2254(e)(1) applies only when a federal court develops new facts in an evidentiary hearing, leaving § 2244(d)(2)'s reasonableness

that the trial court's credibility findings were erroneous. Thus, this Court must presume that petitioner did not inform counsel of his potential alibi defense or provide to counsel the names of alibi witnesses. And, this being the case, petitioner cannot show that counsel was ineffective for failing to investigate and call at trial the alibi witnesses. It is well established that "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Strickland*, 466 U.S. at 691. Because petitioner did not provide counsel the names of his alibi witnesses, counsel was not ineffective. *See Malpeso v. United States*, 38 Fed. Appx. 45, 47-48 (2d Cir. 2002); *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994); *Laurey v. Graham*, 596 F. Supp. 2d 743, 749 (W.D.N.Y. 2009).

Moreover, petitioner cannot show a reasonable probability that the result of the proceeding would have been different had the alibi witnesses been called at trial. The affidavits are highly suspect. New statements from witnesses years after the crime are inherently suspect, *see Schlup*, 513 U.S. at 331, and such statements are to be viewed with "a degree of skepticism." *Herrera*, 506 U.S. at 423 (O'Connor, J., concurring). Petitioner was convicted in 2007, yet the affidavits were not executed until almost two years later, in 2009. There is nothing to explain why the witnesses remained silent during this time. *See Lewis v. Smith*, 110 Fed. Appx. 351, 355 (6th Cir. 2004)

---

determination as the sole means for evaluating state court factual findings where no additional evidence is adduced in the federal court. *See Wood v. Allen*, 130 S. Ct. 841, 848 n.1 (2010) (discussing split of authority). The Court granted *certiorari* on this issue in *Wood*, but ultimately declined to resolve it. *See id.* at 849. Although the Sixth Circuit has not explicitly decided this issue, it has repeatedly stated that, in making a reasonableness determination under § 2254(d)(2), a federal court must afford state court factual findings a presumption of correctness under § 2254(e)(1), and has done so in cases not involving any federal court evidentiary hearing. *See, e.g.*, *Harris v. Haeberlin*, 526 F.3d 903, 910 (6th Cir. 2008); *Dixon v. Jamrog*, 121 Fed. Appx. 93, 94 (6th Cir. 2005); *Finley v. Rogers*, 116 Fed. Appx. 630, 632 (6th Cir. 2004); *Dennis v. Mitchell*, 354 F.3d 511, 518 (6th Cir. 2003). Thus, the Sixth Circuit approach is in accord with those courts that hold § 2254(e)(1) applicable to all state court factual findings, regardless of whether the federal court conducts an evidentiary hearing.

21

(proper for district court to reject as suspicious a witness' recanting affidavit made two years after petitioner's trial); *Olson v. United States*, 989 F.2d 229, 231 (7th Cir. 1993) (recantation more than four years after trial testimony was dubious).  Further, there is not a reasonable probability that the alibi witnesses' testimony would have altered the jury's assessment of the evidence against petitioner.  As petitioner's sister and mother, respectively, the witnesses would obviously have had a strong motive to fabricate an alibi defense on petitioner's behalf, and thus their "testimony would not have been particularly compelling and would have been subjected to vigorous impeachment." *Ball v. United States,* 271 Fed. Appx. 880, 884 (11th Cir. 2008); *see also*, *United States ex. rel. Emerson v. Gramley,* 883 F. Supp. 225, 236-37 (N.D. Ill. 1995) (counsel not ineffective in failing to call petitioner's mother and ex-wife as alibi witnesses, because they were "patently interested witnesses" who would have added little value to the case).  For these reasons, the Michigan Court of Appeals's rejection of petitioner's claim was reasonable.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

   3. *Appellate Counsel*

   Finally, petitioner contends that appellate counsel was ineffective for failing to raise on direct appeal his claim that trial counsel was ineffective for failing to investigate and present his alibi witnesses.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

   As explained above, petitioner cannot show that his alibi-related ineffective assistance of trial counsel claim is meritorious.  Thus, he cannot show a reasonable probability that the result of his appeal would have been different had counsel raised this claim, nor can he show that this claim was clearly stronger than the ineffective assistance claims raised by counsel such that counsel's performance was deficient.  Further, although counsel did not raise this claim, petitioner did raise

it in his *pro per* supplemental brief, and the claim was considered and rejected on the merits by the

Michigan Court of Appeals. Because this claim was addressed on the merits by the court of appeals,

petitioner cannot show that counsel was ineffective for failing to raise the claim. *See Powell v.*

*Berghuis*, ___ Fed. Appx. ___, ___, 2013 WL 6620475, at *10 (6th Cir. Dec. 17, 2013); *United*

*States v. Dixon*, 267 Fed. Appx. 823, 825 (10th Cir. 2008); *Williams v. Artus*, 691 F. Supp. 2d 515,

531 (S.D.N.Y. 2010); *Rodriguez v. Trombley*, No. 2:06-CV-11795, 2010 WL 120222, at *9 (E.D.

Mich. Jan. 8, 2010) (Cohn, J.). Accordingly, the Court should conclude that petitioner is not entitled

to habeas relief on this claim.

E.      *Recommendation Regarding Certificate of Appealability*

        1.      *Legal Standard*

        As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides

that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge

issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that

"[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing

of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this

language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S.

880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a

certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack*

*v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a

"substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously

less than the burden for establishing entitlement to the writ; otherwise, a certificate could never

issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial

23

showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.""" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.      *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability.  Petitioner

24

has failed to show that Bartell's identification of him resulted from any impermissibly suggestive identification procedure, and thus the resolution of his claim that counsel was ineffective for failing to seek suppression of the identification is not reasonably debatable.  Further, because counsel effectively attacked Bartell's identification through cross-examination and argument to the jury, the resolution of petitioner's claim that counsel was ineffective for failing to present an identification expert is not reasonably debatable.  Because petitioner cannot show that he told counsel about his potential alibi witnesses, nor can he establish a reasonable probability that the result of his trial would have been different had counsel presented his alibi witnesses, the resolution of this ineffective assistance claim is not reasonably debatable.  Finally, because the resolution of his alibi-related ineffective assistance of trial counsel claim is not reasonably debatable, and because the claim was in any event considered on the merits by the Michigan Court of Appeals, the resolution of petitioner's ineffective assistance of appellate counsel claim is not reasonably debatable. Accordingly, the Court should deny petitioner a certificate of appealability.

F.     *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.  If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.   <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED.

25

R. C*IV*. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: December 26, 2013              s/ Paul J. Komives
                                      PAUL J. KOMIVES
                                      UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on December 26, 2013, electronically and/or by U.S. mail.

                                      s/Michael Williams
                                      Relief Case Manager for the
                                      Honorble Paul J. Komives